IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AUDIO MARKETING SERVICES, S.A.S.,

    Plaintiff,

  v.

MONSTER CABLE PRODUCTS, INC.,

    Defendant.

No. C 12-04760 WHA

**ORDER GRANTING MOTION TO DISMISS AND POSTPONING MOTION FOR SANCTIONS**

## INTRODUCTION

In this contract action, defendant moves for dismissal under FRCP 12(b)(6) and for sanctions under FRCP 11. After a hearing and additional briefing on the matter, the motion to dismiss is **GRANTED** and the motion for sanctions is **POSTPONED**.

## STATEMENT

Plaintiff Audio Marketing Services, S.A.S., a French corporation, is a "family owned business" which for more than 35 years has distributed "high fidelity audiovisual products throughout France." In 1984, plaintiff and defendant, Monster Cable Products, Inc., entered an arrangement under which plaintiff distributed Monster's audiovisual products in France. In 1986, the parties entered their first formal contract regarding this relationship, and in 1995, plaintiff and a Monster affiliate, Monster Cable International, Ltd., entered the agreement at issue (the parties agree that the defendant California corporation here "succeeded to and assumed

all obligations" of this agreement).  According to its terms, plaintiff became Monster's exclusive French distributor, and Monster agreed not to compete with plaintiff within France, specifically with regard to certain customers with whom plaintiff had existing relationships.  The contract contained a 30-day termination provision and California choice-of-law and forum-selection clauses (Compl. ¶¶ 7–11).

One of plaintiff's existing customers, Dacem, was a distributor who purchased products for a large network of French electronics stores, including a 200-store chain called Darty.  According to plaintiff, its "significant contacts" with Dacem were key to negotiating this substantial market for Monster.  As negotiations progressed, Monster became "increasingly non-responsive."  Although initial orders were due for fulfillment in August 2001, Monster instead concurrently "demanded introductions and meetings with key Dacem personnel in charge of purchasing."  Plaintiff felt it had no choice but to agree, but later began to suspect that Monster intended to bypass it to sell to Dacem and Darty directly (*id. ¶¶* 12–20).

Plaintiff alleges Monster began to sell directly to Darty as early as January 2002. In August 2002, Monster gave plaintiff a 30-day notice of termination, pursuant to the agreement's termination clause.  In January 2003, plaintiff sued Monster in a tribunal of France. There plaintiff asserted, along with contract and tort claims, that irrespective of the underlying contract's terms, a mere 30-day notice breached Article L.442-6.I.5 of the Commercial Code of France, which prohibits the "brutal termination of contracts."  The Paris Appeals Court upheld the tribunal's finding that it had jurisdiction to apply the law of France, and on remand, the tribunal awarded damages of €312,344 in recompense for "brutal" (*i.e.*, sudden) termination of a long-term business agreement and for loss of commercial opportunities.  Overturning this decision, France's Supreme Court, the *Cour de cassation*, held in October 2008 that the contract's forum-selection clause should govern.  In May 2011, a different panel of the Paris Appeals Court affirmed the Supreme Court's decision.

Plaintiff also alleges Monster breached the contract by directly competing with plaintiff for French customers, and that Monster tortiously interfered with plaintiff's contract with Darty (Compl. ¶¶ 21–45).

1    Monster moves to dismiss under FRCP 12(b)(6).  With a plethora of alternative
2 arguments, Monster urges that California's four-year and two-year statutes of limitations should
3 respectively bar the contract and tortious interference claims, arguing that:  (1) equitable tolling
4 does not apply, because plaintiff did not specifically plead the doctrine; (2) plaintiff does not
5 meet the test for application of judicial equitable tolling of its claims; (3) California Code of
6 Civil Procedure Section 355 bars application of equitable tolling here because more than a year
7 passed after the final decision of the courts of France in May 2011 before plaintiff filed this
8 action in September 2012; (4) even if equitable tolling applied, plaintiff should have known as
9 of the 2008 Supreme Court of France decision that this action could only proceed further, if at
10 all, in California, and therefore the limitations periods would have run already; and (5) even if
11 the action in France were not considered final until the remand decision of May 2011, tolling
12 would not save the tort claim, because its two-year limitations period would have run even if the
13 most lenient possible tolling period were granted (Br. at 14–24).  As to the claim under Article
14 L.442 of France, Monster argues that California's choice-of-law rules require the choice-of-law
15 provision to be enforced, resulting in dismissal of the claim (*id.* at 9–11).

Plaintiff opposes dismissal on the ground that equitable tolling need not be pled if the facts support its application.  Furthermore, plaintiff argues that FRCP 12(b)(6) motions are rarely the proper occasion for equitable tolling analyses, given their generally fact-intensive nature (Opp. at 18–25).  As to the claim under Article L.442, plaintiff argues that California's choice-of-law rules require the application of the laws of France because application of California contract law to enforce the 30-day termination provision would conflict with a fundamental policy of France, embodied in Article L.442-6.I.5 (*id.* at 8–14).

A hearing was held on the motion in February 2013, following which the parties were given several days to submit supplemental briefs and replies.

**ANALYSIS**

**1.    CLAIM FOR BRUTAL TERMINATION OF CONTRACT
         UNDER ARTICLE L.442.**

The contract's forum-selection and choice-of-law provision reads:  "The validity, interpretation, and performance of this agreement shall be controlled by and construed under the

3

laws of the State of California.  The City and County of San Francisco . . . shall be the proper venue for any action arising under the provisions of this Agreement."  A threshold question is whether this choice-of-law provision is valid and covers the disputes at issue.  Normally, courts interpret a contractual choice-of-law provision pursuant to the law of the state chosen by the clause.  In light of the parties' failure to request or brief interpretation under the law of France, the default rule will be applied and the clause will be examined under California contract principles.  A "valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates."  *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459, 468–70 (1992); *see also Lane v. Wells Fargo Bank N.A.*, No. 12-04026 WHA, 2013 WL 269133, at *4 (N.D. Cal. Jan. 24, 2013).  The clause here is written in similarly broad language indicating the "agreement shall be controlled by and construed under" California law.  It therefore *may* be applied to all disputes, including those in tort, arising from this contract.  Since one party argues against its application, however, a choice-of-law analysis must be undertaken to determine whether it *will* be applied.

"[A] federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits."  *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991).  Thus, California choice-of-law principles will govern.  California courts apply the Restatement (2d) of Conflict of Laws, Section 187, requiring the court:

> first to determine either:  (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.  If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California.  If there is no such conflict, the court shall enforce the parties' choice of law.  If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' [Citation.]  If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

4

*Nedlloyd*, 3 Cal. 4th at 482.  In the less likely scenario where, as here, the court is being asked to determine under *California* choice-of-law principles whether a *California* choice-of-law clause applies, then "[t]echnically, the inquiry is not whether there is a conflict with a fundamental policy of California, but whether there is a conflict with a fundamental policy of the state whose law would apply under Restatement Section 188 in the absence of a contractual choice of law."  *Discover Bank v. Super. Ct.*, 134 Cal. App. 4th 886, 891 (2005).  To that end, "a court considers a variety of factors (e.g., place of contracting, place of performance) in determining the state with the greater interest in having its law applied to an issue . . . ." *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1545 (1995).

Turning to the *Nedlloyd* test, this order finds as follows:  (1) The first step of the test is met; the parties have a substantial relationship to California; (2) On our record, it is clear that California law would apply absent a choice-of-law provision; and  (3) Therefore, California law will apply to this action.  These points are now developed in detail.

### A. California's Substantial Relationship To the Parties and Transactions.

This factor is satisfied where, as here, one of the parties is domiciled in the chosen state. *Nedlloyd*, 3 Cal.4th at 467.  The analysis need not then address whether there is "any other reasonable basis for the parties' choice of law."

### B. California Law Would Apply Absent a Choice of Law.

As noted above, because the issue is whether to apply a California choice-of-law clause, it must be determined which state's law would apply in the absence of a choice-of-law provision. First, Restatement Section 188 requires the following five contact-related factors to be examined in order to determine whether one state clearly has more interest in the dispute:

(1) The place of contracting,

(2) The place of negotiation of the contract,

(3) The place of performance,

(4) The location of the subject matter of the contract, and

5

    (5) The domicile, residence, nationality, place of incorporation and place of business of the parties.

Subsequent to this determination, the test requires the five contact-related factors to be considered in examining the following general principles laid out in Section 6:

    (1) The needs of the interstate and international systems,

    (2) The relevant policies of the forum,

    (3) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (4) The protection of justified expectations,

    (5) The basic policies underlying the particular field of law,

    (6) Certainty, predictability and uniformity of result, and

    (7) Ease in the determination and application of the law to be applied.

  The only other federal opinion to consider a claim under Article L.442 performed a choice-of-law analysis that is almost directly on point. *AMX Corp. v. Pilote Films*, No. 3:04-2007 WL 1695120 (N.D. Tex. June 5, 2007). A Texas manufacturer carried on a long-term, exclusive distribution agreement with a French distributor. About a decade into the arrangement, the manufacturer notified the French distributor that it would not be renewing the contract after it expired. Among other claims under the laws of France, the distributor alleged this termination violated the same provision of Article L.442 at issue here. The court found that because the parties had not been following the contract's strict written year-to-year renewal requirements, the relationship was based on an implied contract. In the ensuing absence of a binding choice of law, Judge Sidney Fitzwater's well-reasoned decision thoroughly examined the issue under Texas's choice-of-law rules, which track California's very closely. Specifically, in the absence of a choice-of-law clause, Texas courts follow Section 188's analysis.

  To do so, Texas courts, like California's, analyze the Section 6 principles in light of the five contact-related factors identified in Section 188 to determine which state has the greater interest in having its law applied. *See Hambrecht*, 38 Cal. App. 4th at 1544–45; *AMX Corp.*,

6

2007 WL 1695120 at *11; *Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*, 47 F. Supp. 2d 1117, 1120–21 (C.D. Cal. 1999).

### *(1)   Section 188 Factors.*

On our record, the five Section 188 contact factors do not point more to one forum than the other. In *AMX Corp.*, the contract was implied by the parties' conduct, which occurred in both Texas and France. The place of performance, the location of the contract's subject matter, and the location of the parties all involved both Texas and France. As an example, the manufacturer developed and produced its products in Texas, but the distributor promoted and marketed them in France. The facts of the instant case indicate a similar distribution arrangement. The agreement does not state on its face, nor does the complaint allege, where the contract was agreed to or negotiated; performance occurred in both France and California; the subject matter dealt with California products in a French market; and the parties are split between France and California. Application of the Section 188 factors fails to yield a clear answer. The analysis must continue by examining the Section 6 principles.

### *(2)   Section 6 Principles.*

Principles (d) and (f) concern the protection of justified expectations and certainty, predictability, and uniformity of result. There is no intimation in the record that any party was unaware of or objected to the inclusion of a California choice-of-law clause. In addition, as the parties conceded at oral argument, Article L.442 was not enacted until 2001. When the parties entered into this contract in 1995, then, they could not have expected that their relationship would come to be governed by an overriding provision of the commercial law of France. Our court of appeals has encouraged enforcement of choice-of-law clauses in commercial contracts as "an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." *Northrop Corp. v. Triad Int'l Mktg. S.A.*, 811 F.2d 1265, 1270 (9th Cir. 1987). Principles (d) and (f) favor California.

*AMX Corp.* considered factors (a), (c), (e), and implicitly, (b), together: the needs of the interstate and international systems, the relevant policies and relative interests of the forum and other interested states in the determination of the particular issue, and the basic policies

7

underlying the particular field of law. As here, France's choice-of-law principles were irrelevant to the choice-of-law determination. Dispositive to his analysis of France's interest in having its own laws apply, Judge Fitzwater found that the courts of France apply the law of the manufacturer's residence when distribution contracts are litigated and would therefore apply Texas law. *AMX Corp.*, 2007 WL 1695120 at *14. There, as here, the manufacturer's state had a strong interest in applying its laws to distribution contracts involving goods manufactured there. Of course, the contract was also for services performed in France. Judge Fitzwater nevertheless concluded that since France would defer to the law of the manufacturer's state, France's interests were necessarily minimized *vis a vis* Texas's. A similar analysis would apply here. Furthermore, application of California's choice-of-law rules must occur in the light of the broader principles laid out in *Nedlloyd*. These include a strong presumption of enforceability of contractual choice-of-law provisions negotiated at arm's-length by sophisticated commercial entities. *Nedlloyd*, 3 Cal.4th at 464–65. Factors (a), (b), (c), and (e) favor California. Principle (g) concerns the ease and determination of the law to be applied. The application of California law in this forum follows a well-trod path. Factor (g) clearly favors California. In sum, this order finds that absent a choice-of-law provision, California law would apply. Having so found, it is unnecessary to reach the question of whether enforcement of the choice-of-law clause would violate a fundamental policy of France. *Nedlloyd*, 3 Cal.4th at 466. In light of the decisions of the courts of France in this very case in favor of enforcement of the choice-of-law clause, it is hard to imagine that doing so would violate a fundamental law of France. Plaintiff cites no authority to the contrary. It is also unnecessary to evaluate which state has the "materially greater interest" in the outcome of this dispute. *Ibid.* Given California's strong policy favoring the enforcement of freely negotiated choice-of-law clauses between commercial entities, *id.* at 461, 469–70, the parties' choice of California law will be enforced and the claim under Article L.442 must be **DISMISSED**.

      **2.**      **CALIFORNIA CONTRACT AND TORTIOUS INTERFERENCE CLAIMS.**

Plaintiff alleges Monster violated their exclusive distribution agreement by selling directly to French customers as early as January 2002 and by competing with plaintiff for direct

8

sales prior to that date.  Plaintiff also alleges Monster tortiously interfered with plaintiff's contract with Darty.  Given that plaintiff did not specify under which jurisdiction's laws it brings these claims, it will be assumed these claims are brought under the California common law. *See AMX Corp.*, 2007 WL 1695120 at *30.  Monster moves to dismiss both claims on statute of limitations grounds.  On a motion to dismiss, a court evaluates a complaint for:

> sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Having determined that California law will govern this action, California's statutory periods for contract and tortious interference claims, which the parties agree are four years and two years, respectively, will be applied.  When a claim is challenged as violating the statute of limitations, courts are limited to the facts alleged in the complaint, and if the face of the complaint indicates that the statutory period for the claim has run, the claim may be dismissed.  If, as here, facts are alleged suggesting the applicability of equitable tolling to suspend the running of the statute, they may be considered.  It is not necessary that the complaint explicitly plead equitable tolling. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275–76 (9th Cir.1993); *see also Ilaw v. Daughters of Charity Health Sys.*, 2012 WL 381240, at *4 n. 4 (N.D. Cal. Feb. 6, 2012) (Judge Lucy Koh).

Equitable tolling is a judicial doctrine that operates independently of Code of Civil Procedure Section 355 to extend a statute of limitations to ensure fairness and "a day in court." *Addison v. California*, 21 Cal.3d 313 (1978).  "As with the limitations period itself, we borrow our rules for equitable tolling of the period from the forum state, California."  Therefore, a "plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors:  1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes*, 5 F.3d at 1275–76.

9

Based on these principles, plaintiff argues its claims should be tolled from the time the action was filed in France in January 2003 until the final decision of the courts of France in May 2011.

*First*, Monster opposes this suggestion on the ground that the French litigation was final as of the 2008 Supreme Court of France decision. As noted above, however, that decision was not binding on the Paris Appeals Court; the statutory period, if equitable tolling applied, would not have begun to run again until after the decision of May 2011.

*Second*, Monster argues that plaintiff fails to meet the standard for equitable tolling. Our court of appeals has explained that this inquiry is "not generally amenable to resolution on [an FRCP] 12(b)(6) motion, where review is limited to the complaint alone . . . California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." A district court, however, may dismiss a complaint if it is clear that, as a matter of law, the plaintiff cannot prove equitable tolling. *Cervantes*, 5 F.3d at 1276.

### A.  Timely Notice.

The first two factors of the equitable tolling test favor its application. "[T]he filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 102 (2008). Here, both parties agree that Monster is the same defendant in both the action in France and the instant action.

### B.  Lack of Prejudice.

"The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Ibid.* The same wrongs — abrupt termination of the contract and violation of the exclusive distribution agreement — served as the basis for both actions. *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1141 (9th Cir. 2001) (applying California law). Even though the parties dispute the legal characterization of the wrongs alleged, they do not contest that the same facts predicated both actions. Because

1  Monster has been defending on the same facts throughout, it is not prejudiced by the instant
2  action.

### C.   Plaintiff's Good Faith and Reasonable Conduct.

"The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison*, the [California] Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended." *McDonald*, 45 Cal. 4th at 102 (internal citations and quotations omitted). Applying California law, courts in this circuit have barred application of equitable tolling based on delays in filing the second action. *See Easley v. County of El Dorado Prob. Dept.*, 478 F. App'x 447 (9th Cir. 2012) (unpublished) (more than a year); *PetersonHouston v. Finet/RPM Mortg. Corp.*, 1997 WL 446230 (N.D. Cal. July 23, 1997) (Judge Vaughn Walker) (more than a year); *Brown v. Napa Valley Unified Sch. Dist.*, 2012 WL 4364673 (N.D. Cal. Sept. 24, 2012) (Judge Joseph Spero) (two years).

It is undisputed that the last decision of the courts of France was issued in May 2011. Sixteen months therefore elapsed before plaintiff filed this action in September 2012. Plaintiff pleads no facts explaining this failure to diligently re-file its claim here, but raises for the first time in its opposition facts that might prove persuasive that it acted reasonably and in good faith in delaying for so long. Plaintiff notes that it is a "small, family-owned business with a single location in Paris," and explains that it took some time to locate and educate an American lawyer to handle its claim (Opp at. 21). Of course, facts outside the pleadings will not be considered on this motion, and in any case, what has been stated is not sufficiently detailed to persuade. Plaintiff has not satisfied the third prong of the standard for equitable tolling. Plaintiff's claims for breach of contract and tortious interference with contract are therefore **DISMISSED**.

### CONCLUSION

For the foregoing reasons, plaintiff's claims are **DISMISSED**. Plaintiff may file a motion seeking leave to file an amended complaint by **MARCH 13, 2013**. A proposed amended complaint must be appended to the motion, which should clearly explain how the proposed

amendment addresses the deficiencies identified herein.  Plaintiff must plead its best case. No claims based on the laws of France may be included in the amended complaint.

Defendant's motion for FRCP 11 sanctions is **POSTPONED**.  This issue will be deferred until after, if at all, plaintiff submits its motion for leave to file an amended complaint.

**IT IS SO ORDERED.**

Dated: February 20, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE