IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDIO MARKETING SERVICES, S.A.S.,<br><br>Plaintiff,<br><br>  v.<br><br>MONSTER CABLE PRODUCTS, INC.,<br><br>Defendant.<br>_____/ | No. C 12-04760 WHA<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES** |

## INTRODUCTION

In this contract action, defendant brings the present motion for attorney's fees. All claims against defendant were dismissed under FRCP 12(b)(6). For the reasons stated below, the motion for attorney's fees is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Audio Marketing Services, S.A.S., a French corporation, is a "family owned business," which, for more than 35 years, has distributed "high fidelity audiovisual products throughout France." In 1984, plaintiff and defendant, Monster Cable Products, Inc., entered into an arrangement under which plaintiff distributed Monster's audiovisual products in France. In 1986, the parties entered their first formal contract regarding this relationship, and in 1995, plaintiff and a Monster affiliate, Monster Cable International, Ltd., entered the agreement at issue. The parties agree that the defendant California corporation here "succeeded to and assumed all obligations" of this agreement. According to its terms, plaintiff became Monster's

exclusive French distributor, and Monster agreed not to compete with plaintiff within France, specifically with regard to certain customers with whom plaintiff had existing relationships. The contract contained a 30-day termination provision and California choice-of-law and forum-selection clauses (Compl. ¶¶ 7–11).

One of plaintiff's existing customers, Dacem, was a distributor who purchased products for a large network of French electronics stores, including a 200-store chain called Darty. According to plaintiff, its "significant contacts" with Dacem were key to negotiating this substantial market for Monster's goods. As negotiations progressed, Monster became "increasingly non-responsive." Although initial orders were due for fulfillment in August 2001, Monster instead concurrently "demanded introductions and meetings with key Dacem personnel in charge of purchasing." Plaintiff felt it had no choice but to agree, but later began to suspect that Monster intended to bypass it to sell to Dacem and Darty directly (*id. ¶¶* 12–20).

Plaintiff alleges that after the deal was struck, Monster began to sell directly to Darty as early as January 2002. In August 2002, Monster gave plaintiff a 30-day notice of termination, pursuant to the agreement's termination clause. In January 2003, plaintiff sued Monster in a tribunal of France. Plaintiff asserted, along with contract and tort claims, that irrespective of the underlying contract's terms, a mere 30-day notice breached Article L.442-6.I.5 of the Commercial Code of France, which prohibited the "brutal termination of contracts." The Paris Appeals Court upheld the tribunal's finding that it had jurisdiction to apply the law of France, and on remand, the tribunal awarded damages of €312,344 in recompense for "brutal" (*i.e.*, sudden) termination of a long-term business agreement and for loss of commercial opportunities. Overturning this decision, however, France's Supreme Court, the *Cour de Cassation*, held in October 2008 that the contract's forum-selection clause should govern. In May 2011, a different panel of the Paris Appeals Court affirmed the Supreme Court's decision.

In the current action, plaintiff also alleges that Monster breached the contract by directly competing with plaintiff for French customers, and that Monster tortiously interfered with plaintiff's contract with Darty (Compl. ¶¶ 21–45). Monster moved to dismiss all of the claims alleged in the complaint. A February order granted the motion to dismiss and postponing

motion for sanctions (Dkt. No. 64). The order dismissed all of the claims alleged in the Complaint and provided that plaintiff could file a motion for leave to file an amended complaint by March 13, 2013. No such motion was filed, and on March 14, Monster withdrew its Motion for Sanctions (Dkt. No. 65).

On July 19, Monster filed a motion for attorney's fees seeking to recover fees incurred in defense of both the action filed in France and this action. AMS has filed an opposition to the instant motion and Monster has filed a reply.

## ANALYSIS

### 1. FEES FOR THE CALIFORNIA ACTION.

Of the three claims for relief brought here, AMS concedes that it is liable for fees involving the contract claim, but not the tort or French law claims (AMS Attorney's Fees Opp. 1). AMS disputes whether Monster can recover for these two claims because they are not raised "on the contract," as required by Section 1717 of the California Civil Code (*ibid*.). For the reasons stated below, AMS is liable for fees involved in defending all of the California claims.

#### A. Breach of Contract Claims.

Under the American rule, the prevailing litigant ordinarily is not entitled to collect reasonable attorney's fees from the losing party. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007). A statute or enforceable contract allocating attorney's fees, however, can overcome this rule. State law governs the enforceability of attorney's fees in contract provisions. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 154 (1928). California permits parties to allocate attorney's fees by contract. *See* Cal. Code Civ. Proc.1021.

Specifically, California Code of Civil Procedure Section 1032(b) entitles the prevailing party to recover costs. Attorney's fees are allowable as "costs" under Section 1032 when authorized by statute. Cal. Code Civ. Proc. 1033.5(a)(10)(B). The statute defines "prevailing party" to include "a defendant in whose favor a dismissal is entered." Cal. Code Civ. Proc. 1032(a)(4).

The ability to contract out of the American rule is circumscribed by California Civil Code Section 1717(a), which provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Section 7.6 of the contract between the parties included a fee clause, providing that:

> 7.6   <u>Attorneys Fees</u>:  Should either party hereto bring an action to enforce any of the terms and conditions contained herein, the prevailing party shall be entitled to reasonable attorney fees as well as costs of suit.

(AMS Attorney's Fees Opp. 3).

This section of the contract unambiguously provided for attorney's fees to the prevailing party enforcing the contract. Although plaintiff disputes whether it is liable for the exact amount of fees claimed by Monster in defending the contract claim, it concedes that it is at least partially liable (*id*. at 10). The contract claim was premised on plaintiff's unsuccessful attempts to enforce certain terms of the agreement. Moreover, in defending the claim, defendant sought to enforce certain terms of the agreement. For the breach of contract claim, defendant is hereby awarded attorney's fees incurred in defending against the challenge, the extent to which will be addressed in a separate order.

### B.   Non-Contract Claims.

Plaintiff argues, even if defendant is entitled to attorney's fees for defense of the contract breach claim, defendant cannot recover fees incurred defending the statutory damages or tort claims.

Section 1717 of the California Civil Code applies only in an action "on a contract." The meaning of "on a contract" has been liberally construed to mean any action involving a contract for the purposes of Section 1717. *Turner v. Schultz*, 175 Cal. App. 4th 974, 979–80 (2009). Furthermore, "California law is settled that an obligation to pay attorney fees incurred in the enforcement of a contract includes attorney's fees incurred in defending against a challenge to the underlying validity of the obligation." *Siligo v. Castellucci*, 21 Cal. App. 4th 873, 878 (1994) (internal quotation marks and citations omitted).

4

The California Supreme Court has held that where "a cause of action based on a contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] Section 1717 only as they relate to the contract action." *Reynolds Metals Co.v. Alperson*, 25 Cal. 3d 124, 129 (1979). Describing the attorney's fees provision, Civil Code Section 1717 specifically refers to fees "incurred to enforce the provisions of [the] contract."  "A litigant may not increase his recovery of attorney's fees by joining a cause of action in which attorney's fees are not recoverable to one in which an award is proper. . . . Conversely, plaintiff's joinder of causes of action should not dilute its right to attorney's fees. *Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.*" *Reynolds Metals Co.v. Alperson*, 25 Cal. 3d at 129–130 (emphasis added).

The California Court of Appeal has explained:

> Attorney's fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.

*Drouin v. Fleetwood Enterprises*, 163 Cal. App. 3d 486, 493 (1985). Apportionment is not required when the issues in the fee and nonfee claim are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units. *Bell v. Vista Unified School District*, 82 Cal. App. 4th 672, 687 (2000). Moreover, "where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion." *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1604 (2008). The California Supreme Court has held, "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." *Shamblin v. Brattain*, 44 Cal. 3d 474, 478–479 (1988).

In the California Action, plaintiff asserted statutory and tort claims along with its breach of contract claim. All claims brought by plaintiff involve enforcement of the terms of the agreement. Plaintiff's complaint clearly disclosed that all claims for relief were related to attempts to protect the benefit of the contract. On the French Commercial Code claim, a prior

order held the choice-of-law provision in the contract was valid and dismissed the claim. In the claim for tortious interference, plaintiff accused defendant of "intentionally breaching [the Agreement], disrupting AMS' business relationship with Darty and causing AMS to lose significant revenue" (Compl.¶ 44). The legal theories and common core of facts between the contract claim and the tort claim make it unnecessary to apportion legal fees between the claims for relief. In addition, the defense of the tort claim was inextricably intertwined with the defense of the breach of contract claim, as the grounds for defending both involved the running of the applicable statutes of limitations and plaintiff's unsuccessful argument that it was entitled to equitable tolling. Defendant is, therefore, entitled to all legal fees for the defense of all claims brought in the California Action.

Plaintiff's reliance on *Gil v. Mansano*, 121 Cal. App. 4th 739 (2004), is misplaced. That action involved *only* noncontract claims. In *Gil*, the California Court of Appeal properly applied the rule that when only noncontract claims for relief are at issue, Civil Code Section 1717 is inapplicable, and the availability of attorney's fees turns on the contract language. *Gil v. Mansano*, 121 Cal. App. 4th at 742–745; *See also Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th at 702–715. Here, plaintiff asserted both contract and noncontract claims to protect the benefit of the contract. Thus, Civil Code Section 1717 applies.

### 2. FEES FOR THE FRENCH ACTION.

In addition to the attorney's fees that Monster requests from this action, it also requests all fees incurred in defending against these same claims before a French court in 2008 and dismissed by the French Supreme Court on jurisdictional grounds in 2011. For the reasons stated below, the request for those fees is **DENIED**.

In dismissing the claims against Monster, the Paris Appeals Court issued a discretionary award of €10,000 in attorney's fees pursuant to Article 700 of the Code of Civil Procedure (Monster Attorney's Fees Br. at 7). Although French courts honor contractual attorney's fees provisions above and beyond Article 700, Monster did not make any such request. Under American principles of *res judicata*, Monster cannot seek contractual attorney's fees in this action, when such fees could have already been awarded, but were never requested.

Admittedly, it is an open question whether Monster could have obtained contractual attorney's fees from the French court. The parties disagree on this point and California authorities are in conflict. Some courts have held that a party can recover attorney's fees for breach of a forum-selection clause. *See Molnar v. 1-800-Flowers.com, Inc.*, No. 08-0542, 2008 U.S. Dist. LEXIS 120863, at *13–14 (C.D. Cal. Sept. 29, 2008). Others have held that a dismissal due to a valid forum-selection clause does not create a "prevailing party" within the meaning of California Civil Code Section 1717. *See Laurel Vill. Bakery, LLC v. Global Payments Direct, Inc.*, No. 06-1332, 2007 U.S. Dist. LEXIS 95238 (N.D. Cal. Dec. 14, 2007) (Judge Martin J. Jenkins). For the purposes of this order, the answer is not consequential. If Monster could have received contractual attorney's fees from the French court, then its motion to do so now is barred by *res judicata*. On the other hand, if prevailing in the French court was not a "final disposition of the rights of the parties," as defined by Section 1717, then Monster was not a "prevailing party" before the French courts within the terms of Section 7.6 of the contract, and AMS is not contractually obligated to pay Monster's attorney's fees.

The French court was in a far better position to evaluate Monster's claims. After AMS's claims were dismissed in a previous order, Monster then waited 149 days to request attorney's fees herein, based on a French lawsuit that ended in 2011. There was undue delay.

## CONCLUSION

For the foregoing reasons, defendant's request for attorney's fees in connection with the French Action is **DENIED**. Defendant's motion for attorney's fees in connection with the California Action is **GRANTED**. Defendant will have to apportion its overall fees so as to isolate only reasonable fees. A companion order will give further direction.

**IT IS SO ORDERED.**

Dated: September 25, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7